UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| ANOUPHONE HOY SABANDITH, | ) | |
| # 253952, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:04-cv-402 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| DAVID GUNDY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| _____ | ) | |

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. On January 26, 2000, an Ottawa County Circuit Court jury found petitioner guilty of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS §750.227b. On February 28, 2000, trial court sentenced petitioner to consecutive terms of 2 years' imprisonment on the firearm conviction and 20-to-40 years' imprisonment on the assault with intent to murder conviction.

Petitioner filed his petition for federal habeas corpus relief on June 17, 2004. Petitioner claims entitlement to federal habeas corpus relief on six grounds: (1) insufficiency of the of the evidence to support his conviction for assault with intent to commit murder; (2) violation of his rights under the Confrontation Clause; (3) ineffective assistance of counsel during cross-examination of Detective Craig Bosman; (4) failure by the prosecutor to call Richard Sherman as a *res gestae* witness; (5) ineffective assistance of counsel for counsel's failure to call Mr. Sherman as a witness; and (6) ineffective assistance of counsel for failure to request lesser included offense

jury instructions. Upon review, I find the grounds raised by petitioner do not provide a basis for granting petitioner federal habeas corpus relief, and recommend that the petition be denied.

## **Procedural History**

### 1.      Trial

The event forming the foundation of petitioner's criminal convictions was the gang-related shooting of Camarino "Chocolate" Hiracheta, occurring in the early morning hours of July 21, 1999, in the parking lot area of the Traditions Apartments located in Ottawa County, Michigan. Petitioner's four-day jury trial began on January 20, 2000, and concluded on January 26, 2000, with the jury's verdict finding him guilty of assault with intent to commit murder and possession of a firearm during the commission of a felony.  (docket #'s 21-24).  Petitioner was represented at trial and during pretrial proceedings by Attorney Donald H. Han.

The prosecution's key witness against petitioner was Peter Manikham.  Manikham's testimony established details of the planning of the attack, its execution, and the getaway from the crime scene.  Manikham testified that on the evening of July 20, 1999, the TRG gang, a group he was attempting to join, was interested in retaliating against a rival gang know as the Latin Kings. Manikham described how a gang official had given instructions against such an attack, and how, contrary to those instructions, petitioner led an attack against the Latin Kings at the Traditions Apartments.  Manikham described being the driver at the head of a five-car caravan of cars containing TRG gang members.  Petitioner was Manikham's front-seat passenger, and from that position directed Manikham where to lead the caravan.  The passengers in the back seat of Manikham's car were Dara Ket and an individual known by the alias "Nasty Boy."  After some

initial reconnaissance, petitioner sent the other cars in the caravan off in a different direction. Manikham, following petitioner's instructions, backed his car onto a two-track road adjoining the Traditions Apartments and parked it.   The car's hood was propped open, again at petitioner's direction.  Peter Manikham testified that he saw petitioner with a gun in his hands as petitioner and Dara Ket walked towards the apartments.  Manikham and Nasty Boy waited in the car.

The victim, Camarino "Chocolate" Hiracheta, was standing in a lighted apartment carport  with Valerie Branderhorst.  Hiracheta was either a member of the Latin Kings gang or associated with gang members.  The shirt Hiracheta was wearing was of a color associated with the Latin Kings. Multiple shots rang out. As Hiracheta was attempting to run away, he was shot through his left ankle and right thigh.  Spent bullets recovered at the crime scene suggested that other shots had been aimed higher. Ms. Branderhorst testified that she heard shots going by her head.  Hiracheta and Branderhorst were able to take refuge inside one of the adjoining apartments.  Branderhorst escaped without suffering any gunshot wounds.  At trial, witnesses described seeing two Asian males in the area around the apartment's dumpster shortly before the shooting.  Physical evidence showed that a total of six shots had been fired from the dumpster area.  Expert testimony established that all the shots had been fired from the same gun.

Peter Manikham described how he heard the gunshots, then saw petitioner and Dara Ket come running back to the car.  Petitioner hid the gun under the hood, then directed Manikham where to drive as the four men made their getaway.  During the getaway, Manikham heard petitioner say that he thought he "got one."   Dara Ket interjected that he had heard the victim scream. Petitioner directed Manikham to the Riley Ski Trails area, where Manikham parked the car.

-3-

Petitioner opened the car's hood, removed the gun from the engine compartment, and put the gun into his waistband.  Petitioner told Manikham to go home and lie low.

On July 27, 1999, Peter Manikham and Dara Ket were pulled over during a traffic stop.  Police recovered the 9 mm handgun that Dara Ket had hidden in the waistband of his pants.  Firearms expert testimony established that the gun recovered from Dara Ket, a Ruger SAP89DC 9 mm semi-automatic, with a laser sight, was the weapon that had been used in the shooting of Camarino "Chocolate" Hiracheta.

After the close of proofs, Judge Calvin Bosman delivered the jury instructions without objections.  The jury later returned its  verdict finding petitioner and Ket guilty.  Petitioner had been on parole at the time these crimes were committed.  At sentencing, Judge Bosman rejected defense counsel's argument that petitioner's sentence should not be enhanced on the basis petitioner's predatory conduct:

> THE COURT: Well, I disagree.  I think the circumstances show that this was predatory conduct, and I also think that Mr. Sabandith was, based on the testimony of what occurred at the apartment and what transpired in the motor vehicle from the apartment to the scene, was a leader in this situation.  He was the one that gave the direction.  He was the one that suggested that, despite what apparently the commander of the organization – and I use those terms loosely, but decided that this was what should occur as opposed to instructions given.

(Sentencing Transcript ("ST"), docket # 25 at 7).  On February 28, 2000, Judge Bosman sentenced petitioner to consecutive prison terms of 2 years on the firearm conviction and 20-to-40 years on the assault with intent to commit murder conviction.    (*Id.* at 11).

-4-

2.      **Appellate Proceedings**

On appeal, petitioner was represented by Attorney Patrick K. Ehlmann.  The two issues  raised on appeal were as follows:

I.      WAS SUFFICIENT EVIDENCE OF THE INTENT TO KILL PRESENTED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT INTENDED TO KILL THE VICTIM?

II.     WAS DEFENDANT DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY HIS TRIAL COUNSEL'S CROSS-EXAMINATION OF A POLICE OFFICER DISCLOSING THAT CODEFENDANT KET HAD MADE AN OTHERWISE INADMISSIBLE STATEMENT INCRIMINATING THE DEFENDANT AND HIS SUBSEQUENT FAILURE TO MOVE FOR A MISTRIAL?

(Defendant Appellant's Brief on Appeal at iii, Statement of Questions Presented, docket # 26).  After the assistant prosecuting attorney had filed his response, petitioner filed a *pro se* brief raising three additional arguments:

III.    WAS DEFENDANT DENIED HIS DUE PROCESS RIGHTS TO A FAIR TRIAL, AND HIS STATUTORY RIGHTS UNDER THE RES GESTAE WITNESS STATUTE, WHERE THE PROSECUTOR FAILED TO PRODUCE AND CALL A CRUCIAL RES GESTAE WITNESS WHO WOULD HAVE TESTIFIED THAT THE DEFENDANT WAS NOT ONE OF THE PERPETRATORS AT THE SCENE OF THE CRIME?

IV.     WAS DEFENDANT DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE, COUNSEL FAILED TO INVESTIGATE, INTERVIEW, AND CALL A WITNESS WHOSE TESTIMONY WOULD HAVE BEEN FAVORABLE TO THE DEFENSE?

V.      WAS DEFENDANT DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, [WHERE COUNSEL] FAILED TO REQUEST A LESSER INCLUDED OFFENSE[] INSTRUCTIONS WHERE THE EVIDENCE AT TRIAL WARRANTED SUCH [AN] INSTRUCTION?

(Defendant-Appellant's Supplemental Brief at vi, Statement of Questions Presented, docket # 26).

On October 18, 2002, the Michigan Court of Appeals issued an unpublished decision rejecting petitioner's arguments and affirming petitioner's convictions. The Court of Appeals found that there was more than sufficient evidence to support the jury's verdict finding petitioner guilty of assault with intent to commit murder:

> To determine whether the evidence is sufficient to support defendants' convictions, this court reviews the evidence de novo, *People v. Mayhew,* 236 Mich.App 112, 124; 600 NW2d 370 (1999), to decide "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v. Hardiman,* 466 Mich. 417, 421; 646 NW2d 158 (2002). The evidence is viewed in a light most favorable to the prosecution. *Id.* "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded to those inferences." *Id.* at 428.
>
> * * *
>
> The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Abraham,* 234 Mich.App 640, 657; 599 NW2d 736 (1999). Defendants challenge the sufficiency of the evidence to prove the second element.
>
> An "intent to kill may be proven by inference from any facts in evidence," *Abraham, supra* at 658, and may be inferred where the natural tendency of the defendant's behavior is to cause death or great bodily harm. *People v. Anderson,* 112 Mich.App 640, 649; 317 NW2d 205 (1981). "A person may have that state of mind without directing it at any particular victim." *Abraham, supra* at 658.
>
> Here, the evidence showed that Sabandith and Ket, both members of the TRG gang, planned to retaliate against a rival gang, the Latin Kings. Although Hiracheta was not a member of the Latin Kings, he had attended their meetings, and several of his relatives were members. After defendants exited the car at the complex and Ket, while armed, surveyed the premises, Sabandith carried the weapon, loaded and cocked, toward the apartment buildings. Approximately six gunshots were then fired in the direction of two people standing in the light of the carport. Hiracheta was struck by two of the gunshots, and Rodriguez heard a bullet go by her head. The fact that the victim was hit in the thigh and foot rather than in a vital organ does not negate an intent to kill, especially considering that the victim was hit while running away. Additionally, the fact that the other bullets entered the apartment building at eye level permits an inference that the shooter did not intend to merely hit the victim in the foot. Viewed in the favor of the prosecution, the evidence was sufficient to enable a rationale trier of fact to find beyond a reasonable doubt that the shooter, which the evidence showed was Sabandith, acted with the requisite intent to kill.

(Op. at 4-5).

The Michigan Court of Appeals rejected all petitioner's claims of ineffective assistance of counsel.  The Court of Appeals began its analysis by examining the standards applicable to a Sixth Amendment claim of ineffective assistance of counsel.

> To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v. Daniel,* 207 Mich.App 47, 58; 523 NW2d 830 (1994). Defendant must further demonstrate a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, *and* the attendant proceedings were fundamentally unfair or unreliable. *People v. Poole,* 218 Mich.App 702, 718; 555 NW2d 485 (1996) (emphasis in original). [*Rodgers, supra* at 713-714.] Actions appearing erroneous from hindsight do not constitute ineffective assistance of counsel if taken for reasons that would have appeared at the time to be sound trial strategy to a competent criminal attorney. *People v. Pickens,* 446 Mich. 298, 344; 521 NW2d 797 (1994) (Mallet, J., concurring in part and dissenting in part).

(Op. at 6).  The Court of Appeals found it unnecessary to address the performance standard with regard to counsel's questioning of Detective Bosman because it found no possible prejudice to petitioner:

> Here, even if there was no sound basis for defense counsel's questioning of Detective Bosman, defendant has not demonstrated that there is a reasonable likelihood that the jury would have acquitted him if it had not heard that Ket had implicated him. The jury's verdict of guilt as to both defendants shows that it believed that Ket was equally involved in the shooting and that it did not find Ket's denials, implication of Sabandith, or alibi credible. Accordingly, Sabandith was not denied the effective assistance of counsel.

(*Id.*).

The Court of Appeals found no merit in petitioner's claims based on the prosecutor's failure to call Richard Sherman as a *res gestae* witness or in the claim that defense counsel was constitutionally ineffective for not calling Richard Sherman as a witness:

> Sabandith argues that he was denied a fair trial because the prosecutor failed to produce and call Richard Sherman, a res gestae witness. We find that Sabandith has failed to demonstrate plain error. *Carines, supra.* Apart from his bald assertion, there is no

indication that Sherman would have provided testimony favorable to Sabandith. More significantly, Sabandith has not demonstrated that the prosecution failed to comply with any duty under the res gestae statute, M.C.L. § 767.40a. Under the amended version of the statute, the prosecutor's former duty to produce res gestae witnesses has been replaced with an obligation to provide notice of known witnesses and to give reasonable assistance in locating witnesses at the defendant's request. *People v. Kevorkian,* 248 Mich.App 373, 441-442; 639 NW2d 291 (2001). Here, the record establishes that the prosecution fulfilled its continuing duty of advising the defense of Sherman's identity as a potential witness for trial. Sabandith does not allege that Sherman was listed as a trial witness by the prosecution or that he requested assistance in locating Sherman. Thus, defendant has not demonstrated that the prosecutor violated any duty under M.C.L. § 767.40a. *Kevorkian, supra.*

Sabandith also argues that his trial counsel was ineffective for failing to call Sherman as a witness or request the assistance of the prosecutor in producing him. Like Sabandith's other ineffective assistance claim, this claim was not raised below, and our review is limited to mistakes apparent on the record. *Barclay, supra.* The decision whether to call a witness is presumed to be trial strategy. *People v. Mitchell,* 454 Mich. 145, 163; 560 NW2d 600 (1997). Ineffective assistance of counsel can take the form of a failure to call witnesses or present other evidence only if the failure deprives the defendant of a substantial defense. *People v. Hyland,* 212 Mich.App 701, 710; 538 NW2d 465 (1995), modified on other grounds 453 Mich. 902 (1996). A substantial defense is one that might have made a difference in the outcome of the trial. *In re Ayres,* 239 Mich.App 8, 22; 608 NW2d 132 (1999).

Here, it is not apparent from the record whether counsel considered calling Sherman as a witness and, if he did consider it, why he ultimately did not call him to testify. Furthermore, because the substance of Sherman's testimony is not known, defendant cannot show that the failure to call Sherman deprived him of a substantial defense. Thus, he has not overcome the presumption of sound trial strategy.

(Op. at 6-7).

Finally, the Court of Appeals found no merit in petitioner's claim that his trial counsel had been ineffective for failing to request jury instructions on lesser included offenses. The record clearly showed that the jury had been instructed on the lesser included offenses, and that the jury verdict form listed lesser included offense options. The jury had determined that petitioner committed the most serious crime charged, assault with intent to murder, and the related criminal offense of possession of a firearm during the commission of a felony. (Op. at 7).

On December 9, 2002, petitioner filed a delayed application for leave to appeal to Michigan's Supreme Court. Petitioner sought leave to appeal on the basis of the arguments rejected by the Michigan Court of Appeals as well as additional arguments not raised in the Court of Appeals. On June 30, 2003, the Michigan Supreme Court issued an order declining leave to appeal stating that it was not persuaded that the questions presented should be reviewed by the court. (docket # 27).

Petitioner filed his federal habeas corpus petition on June 17, 2004.

## Discussion

### A.    Standard of Review

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 125 S. Ct. 847, 853 (2005)(citations omitted). If a state court adjudicated the claim, AEDPA standards must be applied. 28 U.S.C. § 2254(d). Thus, even in instances where a state court has not clearly articulated its reasoning, if the circumstances suggest that the state court actually considered and decided the issue, the review is not *de novo,* but is limited by the deferential AEDPA standards. *Onifer*, 255 F.3d at 316; *Harris*, 212 F.3d at 943. *De novo* review is restricted to instances where the state court did not address the merits of a claim. In that limited set of circumstances, "there are simply no results, let alone reasoning, to which [the habeas] court can

-9-

defer." *McKenzie*, 326 F.3d at 727; *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005)("[W]hen a claim has not been adjudicated on the merits in State Court proceedings, and has not been procedurally defaulted, we look at the claim *de novo* rather than through the deferential lens of AEDPA.")(citations omitted); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

      The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of

the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407; *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001).

"It is important to note, however, that 'an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law.'" *Harbison v. Bell*, 408 F.3d 823, 829 (6th Cir. 2005)(quoting *Williams*, 529 U.S. at 409). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410; *see Bell v. Cone*, 535 U.S. at 694; *Payne v. Bell*, 418 F.3d 644, (6th Cir. 2005)("A state court decision involves an 'unreasonable application' of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts before it in an objectively unreasonable manner.") (citations omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle

-11-

with clarity sufficient to satisfy the AEDPA bar."); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).   The AEDPA standard includes an important temporal limitation. "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003)(quoting *Williams*, 529 U.S. at 412).   Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004)(describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry").   "'Federal Courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.'" *Payne*, 418 F.3d at 656 (quoting *Cone v. Bell*, 125 S. Ct. at 853). "The state court decision need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, 'so long as neither the reasoning nor the result of the state court decision contradicts them.'" *Dennis*, 354 F.3d at 517-18 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

Section 2254(d)(2) authorizes a federal court to grant habeas corpus relief where the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding."   28 U.S.C. § 2254(d)(2).   A federal court may not grant relief under § 2254(d)(2) merely because it disagrees with the state court's factual determination.   "Rather, the state court's factual determination must be 'objectively unreasonable' in light of the evidence presented during state proceedings.   Furthermore,

a state court's factual determinations are presumed correct, and can only be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1)."  *Dennis*, 354 F.3d at 518.

      Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings.  28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

      Applying the foregoing standards, I find that petitioner is not entitled to habeas corpus relief.

**B.**      **Analysis of the Grounds Raised By Petitioner**

      1.      <u>Sufficiency of the Evidence</u>

      Petitioner challenges the sufficiency of the evidence to support the intent to kill element of assault with intent to commit murder.  Petitioner believes that proof of intent to kill "should [require] more th[a]n shooting a person in the leg or thigh."  (Petition at 3).  Petitioner's argument does not provide any basis for overturning this criminal conviction.  The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.  *See People v. McRunels*, 603 N.W.2d 95, 102 (Mich. Ct. App. 1999).  "The intent to kill may be proven by inference from any facts in evidence."  *Id.*; *see People v. Lawton*, 492 N.W.2d 810, 815 (Mich. Ct. App. 1992).  Intent to kill may be inferred where

the natural tendency of the defendant's behavior is to cause death or great bodily harm. *See People v. Anderson,* 317 NW2d 205, 209 (Mich. Ct. App. 1981). "A person may have that state of mind without directing it at any particular victim." *People v. Abraham*, 599 N.W.2d 736, 746 (Mich. Ct. App. 1999). The Michigan Court of Appeals, applying the standards for sufficiency of the evidence established by the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), held that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of the crime, including intent to kill, beyond a reasonable doubt. (Op. at 4-5). Contrary to petitioner's assumption, a bullet wound in the leg can be, and often is, fatal, and the jury was clearly entitled to infer a specific intent to kill from this and other evidence. I find that the decision of the Michigan Court of Appeals regarding the sufficiency of the evidence supporting petitioner's assault with intent to commit murder conviction easily passes review under AEDPA standards. 28 U.S.C. § 2254(d).

2.    Confrontation Clause

Petitioner's state-court appeal did not include any Confrontation Clause claim. Respondent's answer (docket # 10 at 14-15), did not address any Confrontation Clause claim, but simply treated the second ground raised in the *pro se* petition as a restatement of petitioner's exhausted ineffective assistance of counsel claim based on the cross-examination of Detective Bosman.[1] I find that respondent's approach is not appropriate because it ignores the unexhausted Confrontation Clause arguments which appear on pages 4 and 5 of the petition and are set forth verbatim below:

---

[1]Petitioner's claims of ineffective assistance of counsel are addressed in section 3 of this report and recommendation.

-14-

II:    THE TRIAL COURT VIOLATED THE SIXTH AMENDMENT CONFRONTATION CLAUSE BY ADMITTING THE NON-TESTIFYING CODEFENDANT'S STATEMENT AS EVIDENCE AGAINST ANOUPHONE SABANDDITH.

    A.    THE TRIAL COURT COMMITTED A PATIENT <u>BRUTON</u>[2] ERROR IN VIOLATION OF MR. SABANDITH'S CONFRONTATION CLAUSE RIGHT, BY BLEEDING IN THE UNREDACTED STATEMENTS OF THE NON-TESTIFYING CODEFENDANT AS EVIDENCE OF MR. SABANDITH'S GUILT.

    B.    THE TRIAL COURT ERRED BY HOLDING (1) THAT THE PORTIONS OF THE CODEFENDANT'S POLICE STATEMENTS IMPLICATING ANOUPHONE SABANDITH WERE ADMISSIBLE AGAINST HIM AS STATEMENTS AGAINST PENAL INTEREST; AND (2) THAT THE STATEMENTS AGAINST PENAL INTEREST HEARSAY EXCEPTION SOMEHOW TRUMPS THE <u>BRUTON RULE</u>.

    C.    THE ERROR CANNOT POSSIBLY BE HARMLESS AS THE CODEFENDANT'S STATEMENT DIRECTLY SUPPLIED THE REQUISITE MALICE FOR ATTEMPTED MURDER.

Ordinarily, a "mixed petition" containing exhausted and unexhausted claims is dismissed. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). Requiring petitioner to return to state court to exhaust his Confrontation Clause claim would be a needless waste of judicial resources. Where, as here, the unexhausted claim is meritless, the district court may proceed despite the lack of exhaustion. "An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see Duncan v. Walker*, 533 U.S. 167, 183 (2001)(Stevens, J., concurring)(noting that 2254(b)(2) "gives the district court the alternative of simply denying a petition containing an unexhausted, but nonmeritorious claims."); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004); *Palmer v. Carlton*, 276 F.3d 777, 780 (6th Cir. 2002)("AEDPA gives the district court the alternative of simply denying

---

[2]*Bruton v. United States*, 391 U.S. 123 (1968).

a petition containing unexhausted but nonmeritorious claims."). Petitioner's Confrontation Clause arguments are premised on a gross mischaracterization of the record. Dara Ket's statements to the police were never admitted into evidence during petitioner's trial.[3] Ket's statements were not admitted as statements against penal interest, or on any other basis. Petitioner's arguments lack any foundation in the underlying record and do not provide any basis for federal habeas corpus relief.

        3.    <u>Ineffective Assistance of Counsel</u>

        A.    Cross-Examination

Petitioner argues that defense counsel was constitutionally ineffective during the cross examination of Detective Bosman of the Ottawa County Sheriff's because, through the following questions and answers, the jury learned that after police arrested Dara Ket, Ket "pointed a finger" at petitioner without further elaboration:

Q     Okay, Now you've interviewed quite a few witnesses in this case?

A     Numerous.

Q     Outside of Peter Manikham, has anybody interviewed pointed a finger at Hoy?

A     Yes.

Q     And who would that be?

A.     Dara Ket.

---

[3]At a pretrial hearing on January 10, 2000, the prosecutor indicated that he would not be attempting to introduce Ket's statements during his case-in-chief. The court issued a corresponding ruling precluding the prosecutor from using Ket's statements in the prosecutor's case-in-chief. (docket # at 10-11, 17). Because Ket never took the witness stand at trial, the court was never placed in a position requiring it to rule if any portions of Ket's statements could be used against Ket for impeachment purposes during cross-examination.

(TT I at 204, docket # 21).  Defense counsel did not ask any further questions of Detective Bosman in this vein.  The prosecutor and Ket's attorney did not ask any follow-up questions.  Dara Ket's statement itself was never introduced into evidence against petitioner.  The attorneys' closing arguments did not include any reference to this portion of Bosman's testimony.  (TT IV at 3-107, docket # 24).

The Michigan Court of Appeals found it unnecessary to determine whether counsel's conduct in asking the above-quoted questions on cross-examination fell below an objective standard of reasonableness, because even assuming it had been, petitioner fell far short of satisfying the prejudice component of the *Strickland*[4] standard.  (Op. at 6).  To satisfy the prejudice component, a petitioner must prove that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is sufficient to undermine the confidence in the outcome."  468 U.S. at 694.  Petitioner makes no attempt to address this issue, or for that matter any ground raised in the petition, under the applicable AEDPA standards.  Peter Manikham's testimony formed the foundation of the prosecution's case against petitioner, not the isolated excerpt selected from Bosman's testimony now relied on by petitioner.  This evidence which was never referred to again during the course of the petitioner's lengthy trial, either through the questioning of Bosman, other witnesses, or the attorneys' closing arguments.  Upon review, I find that the state-court decision finding no prejudice to petitioner, and thus, no Sixth Amendment violation, was not contrary to, or involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

---

[4] *Strickland v. Washington*, 468 U.S. 668 (1984).

B.     *Res Gestae* Witness

Petitioner reasserts his unsuccessful state-law argument that the prosecutor improperly failed to produce Richard Sherman as a *res gestae* witness.  This state-law issue does not provide any basis for federal habeas corpus relief.  "Apart from [petitioner's] bald assertion, there is no indication that Richard Sherman would have provided testimony favorable to [petitioner]." (Op. at 6).   Although prior to 1986 Michigan law had required the prosecutor to endorse on the criminal information the names of all *res gestae* witnesses then known to him and use due diligence to compel the attendance of all such witnesses at trial, the statute was abolished roughly fourteen years prior to petitioner's trial.  At the time of trial, Mich. Comp. Laws § 767.40a only required the prosecutor to provide notice of known witnesses and to give reasonable assistance in locating witnesses at the defendant's request.  The Michigan Court of Appeals found that the prosecutor had fulfilled its obligations under this statute.  (Op. at 6).  Even when it was in effect, Michigan's *res gestae* witness was purely a matter of state law and did not provide any basis for federal habeas corpus relief.  *See Atkins v. Foltz*, No. 87-1341, 1988 WL 87710 (6th Cir. Aug. 24, 1988) (federal law does not require production of all *res gestae* witnesses; although Michigan law requires the production of all *res gestae* witnesses, federal court cannot hear state claim on petition for habeas corpus); *accord Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001)("Federal law does not require the production of *res gestae* witnesses.").  A criminal defendant does have a federal right under the Sixth Amendment to compulsory process, but the record does not indicate any abridgement of this right.  The Compulsory Process Clause prohibits the state from making a witness unavailable or engaging in other acts of affirmative interference with defendant's right to interview or subpoena witnesses. *See United States v. Colin*, 928 F.2d 676, 679 (5th Cir. 1991).  It does not

-18-

require the prosecutor to produce witnesses.  *Id.*; *see also United States v. Hamilton*, No. 92-1342, 1993 WL 118438, at * 4 (6th Cir. April 16, 1993) (Sixth Amendment's Compulsory Process Clause allows criminal defendants the right to government assistance to compel the attendance of favorable witnesses at trial, but the government is under no obligation under the Compulsory Process Clause to produce the witness for the defendant).  The requirement that *res gestae* witnesses be produced by the prosecutor had its genesis in a state law which was abolished long before petitioner's trial, and the rule is not a component of federal law.  Habeas corpus relief is not available for alleged violations of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The Michigan Court of Appeals rejected petitioner's argument that defense counsel was somehow ineffective for failure to call Richard Sherman as a witness for the defense at trial. (Op. at 6-7).  As previously noted, there was and is no record evidence suggesting that Mr. Sherman's testimony would have been favorable to petitioner.  Petitioner now refers to Sherman as a potential alibi witness.  (docket #1 at 5).   Petitioner's ability to assert any alibi defense was substantially, if not completely, undermined by the recordings of petitioner's jailhouse telephone calls.  These recordings demonstrated substantial efforts on petitioner's part to encourage others to manufacture alibi testimony on his behalf.  Counsel's  strategic decision by counsel not to call a weak, and perhaps perjured, alibi witness is well within *Strickland*'s performance prong.  The adverse consequences of calling a weak alibi witness is well-illustrated by the prosecutor's cross-examination of the alibi witnesses offered by co-defendant Dara Ket, and avenues that testimony opened for the prosecutor's closing argument.  The decision of the Michigan Court of Appeals finding no Sixth Amendment violation easily passes review under deferential AEDPA standards.

C.      Alleged Failure to Request Jury Instructions on Lesser Included Offenses

The last ground raised in the petition requires little discussion.  Applying the *Strickland* standard, the Michigan Court of Appeals held that petitioner's ineffective assistance of counsel claim based on counsel's purported failure to request jury instructions on the lesser included offenses was meritless.  (Op. at 7).  The record shows that the jury was instructed on lesser included offenses, and the verdict form provided the jury with an opportunity to find petitioner not guilty or guilty of less serious offenses.  The jury found petitioner guilty of the most serious offense charged, assault with intent to commit murder and the related firearms charge.  Petitioner has not identified any error in the decision of the Michigan Court of Appeals, much less carried his burden under the demanding standards of 28 U.S.C. § 2254(d).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

Dated:   October 17, 2005                          /s/  Joseph G. Scoville                            
                                                   United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).